KIRK D. MILLER, WSBA #40025
Kirk D. Miller, PS
421 W. Riverside Avenue, Ste. 660
Spokane, WA  99201
(509) 413-1494 Telephone
(509) 413-1724 Facsimile
kmiller@millerlawspokane.com
*Attorney for Plaintiff*

BRIAN G. CAMERON, WSBA #44905
SHAYNE J. SUTHERLAND, WSBA #44593
Cameron Sutherland, PLLC
421 W. Riverside Avenue, Ste. 660
Spokane, WA  99201
(509) 315-4507 Telephone
(509) 315-4585 Facsimile
bcameron@cameronsutherland.com
ssutherland@cameronsutherland.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ISAAC GORDON, an individual, and all those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ROBINHOOD FINANCIAL, LLC, a Delaware limited liability company and subsidiary of ROBINHOOD MARKETS, INC., a Delaware corporation,<br><br>Defendants. | Case No.  2:19-cv-00390-TOR<br><br>**FIRST AMENDED COMPLAINT – CLASS ACTION**<br><br>**(JURY DEMANDED)** |

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 1 of 26

COMES NOW the Plaintiff, ISAAC GORDON, by and through his attorneys of record, Kirk Miller of Kirk D. Miller, PS, and Brian G. Cameron and Shayne J. Sutherland of Cameron Sutherland, PLLC, and for causes of action against the above-named Defendants, complains and alleges as follows:

## I.  INTRODUCTION

1.1    This case involves the Defendants' initiation or assistance in the transmission of commercial electronic text messages to Washington state recipients without first obtaining those recipients' clear and affirmative consent to receive such messages in violation of Washington's Consumer Protection Act (CPA), RCW 19.86, *et seq*., vis à vis the Defendants' violations of Washington's Commercial Electronic Mail Act (CEMA), RCW 19.190, *et seq.  See Wright v. Lyft*, 189 Wn.2d 718, 726, 406 P.3d 1149, 1152 (2017) (Washington's Legislature intended that that CEMA claims be brought under the CPA).

1.2    The Plaintiff brings this Complaint, on behalf of himself and a class of all others similarly situated, against Defendants ROBINHOOD FINANCIAL, LLC, and ROBINHOOD MARKETS, INC., (hereinafter collectively "Defendants") pursuant to CR 23.

1.3    The Plaintiff seeks statutory damages, exemplary damages, declaratory and injunctive relief, costs and attorneys' fees, and other relief against

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 2 of 26

the Defendants for its illegal "text spamming" to Washington consumers, businesses, and other cellular telephone users.

## II. IDENTITY OF THE PARTIES

2.1    Plaintiff Isaac Gordon is a natural person residing in Spokane County, Washington, who received one or more unsolicited commercial electronic text messages that were formulated, composed, sent, originated, initiated, and/or transmitted by the Defendants.

2.2    The Plaintiff and putative class members are consumers, business entities, and cellular telephone users residing in the state of Washington, each of whom is a "person" as that term is defined in RCW 19.190.010(11) and RCW 19.86.010(1).

2.3    Defendant Robinhood Financial, LLC, is a Delaware limited liability company that provides online investment brokerage services and conducts related business activities throughout Washington state.  Defendant Robinhood Financial, LLC is a subsidiary of Defendant Robinhood Markets, Inc.

2.4    Defendant Robinhood Markets, Inc., is a Delaware corporation that provides online investment brokerage services and conducts related business activities throughout Washington state.

2.5    Defendants' company headquarters are located at 85 Willow Road in Menlo Park, California.

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 3 of 26

2.6     With respect to the allegations herein, each of the Defendants was the agent, servant, representative, partner,  and/or joint venturer, of the other and was acting within the course and scope of said agency, service, representation, and/or venture, and materially assisted the other Defendant.  Each of the Defendants ratified the acts and omissions of the other Defendant and/or at all times material hereto doing the things alleged in this Complaint within the course and scope of such agency and is subject to vicarious liability for the acts of the other Defendant.

2.7     Each of the Defendants is a "person" as that term is defined in RCW 19.190.010(11) and RCW 19.86.010(1).

### III.    STATEMENT OF JURISDICTION AND VENUE

3.1    Plaintiff is a resident of a different state than the Defendants. This Court has jurisdiction over the parties to this action pursuant to 28 USC § 1332, *et seq*., and 28 USC § 1453, *et seq*.

3.2     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3.3     Venue is proper in this District under 28 USC § 1391(b) because the Defendants conduct affairs and transact business in this District, some or all of the unlawful acts giving rise to this Complaint occurred in this District, and the Plaintiff resides within the territorial jurisdiction of the court.

///

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 4 of 26

# IV.    CLASS ACTION ALLEGATIONS

4.1    The Plaintiff brings this claim on behalf of the following class, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

4.2    The class consists of:

(a)    All persons, as that term is defined in RCW 19.190.010(11) and RCW 19.86.010(1);

(b)    Who are Washington residents;

(c)    To whom the Defendants initiated or assisted in the transmission of one or more commercial electronic text messages;

(d)    To a cellular telephone or pager service that is equipped with short message capability or any similar capability allowing the transmission of text messages;

(e)    Without obtaining the recipients' clear and affirmative consent to receive such messages in advance;

(f)    Within the previous four (4) years;

(g)    Through the date that the class is certified.

4.3    The identities of all class members are readily ascertainable from the contact records of the Defendants and those telephone users who have been targeted by the Defendants' unsolicited commercial electronic text messages.

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 5 of 26

4.4    Excluded from the Class are the Defendants and all officers, members, partners, managers, directors, and employees of the Defendants and their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

4.5    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Fed. R. Civ. P. 23, because there is a well-defined community interest in the litigation:

(a)    **Numerosity:**  The Class defined above is so numerous that joinder of all members would be impractical.  The Defendants serve an actual and potential customer base of millions of individuals in Washington to whom the Defendants regularly transmit or assist in the transmission of unsolicited commercial electronic text messages.

(b)    **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Class and those questions predominate over any questions or issues involving only individual class members. The principal issue is whether the Defendants' initiation or assistance in the transmission of unsolicited commercial electronic text messages to Washington recipients violates Washington's CPA, RCW 19.86, *et seq*., vis à vis the Defendants' violations of Washington's CEMA, RCW 19.190, *et seq*., per *Wright*, 189 Wn.2d at 726, 406 P.3d at 1152.

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 6 of 26

(c)    **Typicality:** Plaintiff's claims are typical of the claims of the class members.  Plaintiff and all members of the Plaintiff Class have claims arising out of the Defendants' common, uniform course of conduct complained of herein.

(d)    **Adequacy:**  Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are averse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. The Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions.  Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

(e)    **Superiority:**  A class action is superior to the other available means for the fair and efficient adjudication of this controversy, because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individuals' actions would engender.

4.6    Certification of a class under Fed. R. Civ. P. 23(b)(3) is also appropriate in that the questions of law and fact common to members of the Class predominate over any questions affecting an individual member, and a class action

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 7 of 26

is superior to other available methods for the fair and efficient adjudication of the controversy.

4.7    The Plaintiff's claims apply to the Defendants' illegal acts and omissions occurring in the four years preceding the filing of this case, through the date that the class is certified.

## V.    PLAINTIFF'S ALLEGATIONS OF FACT

5.1    The Plaintiff repeats, reiterates, and incorporates the allegations contained in the paragraphs above with the same force and effect as if the same were set forth at length herein.

5.2    The Plaintiff is a Washington individual who regularly uses a cellular telephone or similar device with the capacity to send and receive transmissions of electronic text messages.

5.3    The Defendants operate an online investment brokerage service and conduct related business activities serving consumers, businesses, and other organizations throughout Washington and the United States.

5.4    The Defendants regularly initiate or assist in the transmission of electronic text messages promoting their commercial brand and services through their "refer-a-friend" (RAF) program, for which they formulate, compose, send, originate, initiate, and/or transmit commercial electronic text messages to third-

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 8 of 26

party intermediaries, who then re-transmit the same messages to ultimate, third-party recipients.

5.5     The Defendants do not obtain the ultimate recipients' clear and affirmative consent to receive the Defendants' commercial electronic text messages prior to initiating or assisting in the transmission of such messages to those recipients.

5.6     The Defendants do not require their intermediaries to obtain the ultimate recipients' clear and affirmative consent to receive the Defendants' commercial electronic text messages prior to initiating or assisting in the transmission of such messages to those recipients.

5.7     The Defendants do not verify whether or not their intermediaries obtain the ultimate recipients' clear and affirmative consent to receive the Defendants' commercial electronic text messages prior to initiating or assisting in the transmission of such messages to those recipients.

5.8     In July 2019, the Plaintiff received an unsolicited commercial electronic text message promoting the Defendants' brand and services.

5.9     In July 2019, the Defendants initiated or assisted in the transmission of an unsolicited commercial electronic text message to the Plaintiff.

5.10    The unsolicited commercial electronic text message transmitted to the Plaintiff invited him to sign up for the Defendants' online brokerage services,

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 9 of 26

promising special incentives for doing so, and stating:  "Your free stock is waiting

for you!  Join Robinhood and we'll both get a stock like Apple, Ford, or Facebook

for free.  Sign up with my link," as follows:



5.11   This unsolicited commercial electronic text message transmitted to the

Plaintiff included a hyperlink to connect to the Defendants' website or mobile

application and register for the Defendants' brokerage services.

5.12   The message did not include an "opt-out" or "stop" option enabling

the recipient to preclude further unsolicited commercial electronic text messages.

5.13   The Defendants formulated the processes and procedures of their RAF

program, through which they transmitted their commercial electronic text

messages, including but not limited to the message transmitted to the Plaintiff, to

ultimate recipients by first transmitting those messages to intermediaries, who then

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 10 of 26

re-transmitted the same messages to ultimate recipients, including but not limited to the Plaintiff.

5.14    In the alternative to the preceding allegation, the Defendants enabled and encouraged their intermediaries to formulate individualized RAF processes and procedures within a centralized system that was formulated by the Defendants used to transmit or re-transmit commercial electronic text messages to ultimate recipients, including but not limited to the Plaintiff.

5.15    The Defendants composed the narrative content and images presented in their commercial electronic text messages, which the Defendants transmitted to intermediaries, who then retransmitted the same messages to ultimate recipients, including but not limited to the Plaintiff.

5.16    In the alternative to the preceding allegation, the Defendants enabled and encouraged their intermediaries to compose or modify some of the narrative content and images the Defendants originally produced by providing those intermediaries with form messages, stock images, hyperlinks, and other messaging elements that conformed with the Defendants' RAF program specifications, which were utilized to transmit or re-transmit commercial electronic text messages to ultimate recipients, including but not limited to the Plaintiff.

5.17    The Defendants sent commercial electronic text messages promoting their RAF program to ultimate recipients, including but not limited to the Plaintiff,

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 11 of 26

by sending such messages to intermediaries and encouraging those intermediaries to re-transmit such messages to ultimate recipients, including but not limited to the Plaintiff.

5.17.1   The Defendants intended and expected their intermediaries to re-transmit the commercial electronic text messages the Defendants sent to them, including but not limited to the message sent to the Plaintiff.

5.17.2   The Defendants actively encouraged and rewarded their intermediaries for re-transmitting the commercial electronic text messages the Defendants sent to them, including but not limited to the message sent to the Plaintiff.

5.17.3   The Defendants promoted, encouraged, and rewarded the re-transmission of their commercial electronic text messages by offering special incentives for their intermediaries who re-transmit their commercial electronic text messages to ultimate recipients, including but not limited to the Plaintiff, as illustrated in the following example, which states, "100% chance to get free stock.  Invite friends to Robinhood.  Once they sign up, you'll both get a free stock (up to $500 per year)":

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 12 of 26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



5.18   In the alternative to the preceding allegation, the Defendants sent commercial electronic text messages by accessing stored contact information shared by their intermediaries and automatically transmitting such messages to ultimate recipients, including but not limited to the Plaintiff.

5.19   In the alternative to the preceding allegation, the Defendants enabled and encouraged their intermediaries to send commercial electronic text messages by providing those intermediaries with the technology, content, and incentives to

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 13 of 26

transmit or retransmit such messages to ultimate recipients, including but not limited to the Plaintiff.

5.20    The Defendants originated commercial electronic text messages regarding their RAF program which were first sent to intermediaries, who then re-transmitted the same messages to ultimate recipients, including but not limited to the Plaintiff.

5.20.1    The Defendants developed, advertised, and promoted the re-transmission of commercial electronic text messages to intermediaries through their website and mobile applications.

5.20.2    The Defendants composed the narrative content, designed and compiled the images, and established the hyperlinks that comprised the commercial electronic text messages that were transmitted first to intermediaries, who re-transmitted those messages to ultimate recipients.

5.21    In the alternative to the preceding allegation, the Defendants enabled and encouraged their intermediaries to originate commercial electronic text messages by developing and supplying those intermediaries with the technology, message content, and incentives to transmit or retransmit such messages to ultimate recipients, including but not limited to the Plaintiff.

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 14 of 26

5.21.1  The Defendants established, maintained, and promoted the website, mobile application, referral program, reward system, and other elements of their RAF program that enabled and encouraged intermediary individuals to transmit commercial electronic text messages to ultimate recipients, including but not limited to the Plaintiff.

5.21.2  The Defendants composed and supplied the narrative content of the commercial electronic text messages, which enabled and encouraged intermediary individuals to transmit virtually identical commercial electronic text messages to ultimate recipients, including but not limited to the Plaintiff.

5.21.3  The Defendants designed and supplied the images presented in the commercial electronic text messages, which enabled and encouraged intermediary individuals to transmit virtually identical commercial electronic text messages to ultimate recipients, including but not limited to the Plaintiff.

5.21.4  The Defendants established and supplied the hyperlinks between the commercial electronic text messages and the Defendants' website and mobile application, which enabled and encouraged intermediary individuals to transmit virtually identical commercial

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 15 of 26

electronic text messages to ultimate recipients, including but not limited to the Plaintiff.

5.21.5   The Defendants developed and promoted special incentives and rewards for the dissemination of their commercial electronic text messages, which enabled and encouraged intermediary individuals to transmit virtually identical messages to ultimate recipients, including but not limited to the Plaintiff.

5.22   The Defendants initiated the transmission of commercial electronic text messages by acting as the original sender of those messages to intermediaries, who then re-transmitted the same messages to ultimate recipients, including but not limited to the Plaintiff.

5.22.1   In addition to transmitting commercial electronic text messages for re-transmission by their intermediaries, the Defendants also urge those intermediaries to share their personal contact lists, which are stored by the Defendants.

5.22.2   The Defendants utilize their intermediaries' personal contact lists to automatically send commercial electronic text messages, including but not limited to the message transmitted to the Plaintiff, to ultimate recipients.

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 16 of 26

5.23    In the alternative to the preceding allegation, the Defendants enabled and encouraged their intermediaries to initiate the transmission of commercial electronic text messages by developing and supplying those intermediaries with the technology, message content, and incentives to transmit or retransmit such messages to ultimate recipients, including but not limited to the Plaintiff, in the same or substantially similar manner as alleged in ¶ 5.21 and its subparagraphs.

5.24    The Defendants transmitted commercial electronic text messages through short-code or long-code numbers and transmission services, which were assigned to the Defendants, to their intermediaries, who then re-transmitted the same messages to ultimate recipients, including but not limited to the Plaintiff.

5.25    In the alternative to the preceding allegation, the Defendants enabled and encouraged their intermediaries to transmit commercial electronic text messages, utilizing their own long-code numbers and assigned transmission services, by developing and supplying those intermediaries with the technology, message content, and incentives to transmit or retransmit such messages to ultimate recipients, including but not limited to the Plaintiff, in the same or substantially similar manner as alleged in ¶ 5.21 and its subparagraphs.

5.26    The Defendants knew or consciously avoided knowing that their intermediaries were engaged in transmitting or re-transmitting commercial

electronic text messages to ultimate recipients, including but not limited to the Plaintiff.

5.27   In the alternative to the preceding allegation, the Defendants knew or consciously avoided knowing that their intermediaries intended to transmit or re-transmit commercial electronic text messages to ultimate recipients, including but not limited to the Plaintiff.

5.28   The Defendants actively promoted, encouraged and rewarded their intermediaries for transmitting or re-transmitting commercial electronic text messages to ultimate recipients, including but not limited to the Plaintiff, in the same or substantially similar manner as alleged in ¶ 5.21 and its subparagraphs.

5.29   The Defendants urged their intermediaries to "Invite friends to Robinhood" by clicking on a virtual "button" that launched an electronic text messaging feature, with a fully composed message to be transmitted to ultimate users, including but not limited to the Plaintiff.

5.30   RCW 19.190.060 states, in its entirety:

(1)   No person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service that is equipped with short message

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 18 of 26

capability or any similar capability allowing the transmission of text messages.

(2)      The legislature finds that the practices covered by this section are matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter 19.86 RCW [Washington Consumer Protection Act]. A violation of this section is not reasonable in relation to the development and preservation of business and is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the consumer protection act, chapter 19.86 RCW.

5.31    Transmitting or assisting in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service that is equipped with short message capability or any similar capability allowing the transmission of text messages is a violation of CEMA, RCW 19.190, *et seq*.

5.32    RCW 19.190.100 states, in its entirety:

The legislature finds that the practices covered by this chapter are matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter 19.86 RCW [Washington Consumer Protection Act]. A violation of this chapter is not

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 19 of 26

reasonable in relation to the development and preservation of

business, and is an unfair or deceptive act in trade or commerce and

an unfair method of competition for the purpose of applying the

consumer protection act, chapter 19.86 RCW.

5.33    In the case of *Wright v. Lyft, Inc.*, 189 Wn.2d at 731, 406 P.3d at

1155, Washington's Supreme Court stated:  "We conclude that RCW 19.190.040

[CEMA's statutory damages provision] establishes the injury and causation

elements of a CPA claim as a matter of law."

5.34    Transmitting or assisting in the transmission of electronic commercial

test messages in violation of CEMA, RCW 19.190, *et seq*., is an unfair or

deceptive act or practice, occurring in trade or commerce, that vitally affects the

public interest and causes injury as a matter of law.

5.35    Acts or practices that violate CEMA, RCW 19.190, *et seq*., also

violate Washington's CPA, 19.86, *et seq*.

5.36    The Defendants provided substantial assistance or support that

enabled its existing users (a.k.a. "subscribers"), as its intermediaries, agents,

assistants, or proxies, to formulate, compose, send, originate, initiate, or transmit

unsolicited commercial electronic text messages to ultimate recipients, including

the Plaintiff, knowing or consciously avoiding knowing that those persons intended

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 20 of 26

to transmit or retransmit commercial electronic text messages to telephone numbers assigned to Washington residents.

5.37   Transmitting or assisting the transmission of a commercial electronic text message is a black-letter violation of CEMA at RCW 19.190.060(1).

5.38   A violation of CEMA is a *per se* violation of Washington's CPA, RCW 19.86, *et seq*., vis à vis RCW 19.190.100 and per *Wright*, 189 Wn.2d at 726, 406 P.3d at 1152.

5.39   CEMA provides a "safe harbor" for persons who can show that that the recipient of a commercial electronic text message clearly and affirmatively consented in advance to receive such text messages under RCW 19.190.070.

5.40   The Plaintiff did not consent, affirmatively or otherwise, to receive commercial electronic text messages from the Defendants or its intermediaries, agents, assistants, or proxies.

5.41   The Defendants cannot show that the ultimate recipients of their commercial electronic text messages, including but not limited to the Plaintiff, clearly and affirmatively consented in advance to receive such text messages.

5.42   In the four years prior to the transmission of the first unsolicited commercial electronic text message promoting the Defendants' brand and services to the Plaintiff, through the date of the filing of this action, the Defendants, directly or through their intermediaries, agents, assistants, and proxies, have initiated or

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 21 of 26

assisted in the transmission of unsolicited commercial electronic text messages to hundreds of Washington recipients without first obtaining those recipients' clear and affirmative consent to receive such messages.

5.43   As a result of the Defendants' acts and omissions, the Plaintiff and members of the putative class have suffered injuries-in-fact, including invasions of privacy, intrusion upon and occupation of the capacity of recipients' telephones or other devices and chattels, and wasted time and attention in tending to unsolicited and unwanted junk text messages.

5.44   As a result of the Defendants' actions and omissions, the Plaintiff and members of the putative class are entitled to recover statutory damages of at least $500 for each of the Defendants' violations, plus actual damages, costs, and fees as provided by applicable statutes.

## VI.    CAUSE OF ACTION
### Violation of Washington's Consumer Protection Act
### RCW 19.86, *et seq.*

6.1   The Plaintiff repeats, reiterates, and incorporates the allegations contained in the paragraphs above with the same force and effect as if the same were set forth at length herein.

6.2   Washington's CPA states in part that: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 22 of 26

6.3    The Defendants engaged in unfair acts and practices in the conduct of trade or commerce in a manner that offended the public interest and caused injury to the Plaintiff and actually injured, has the capacity to injure, or had the capacity to injure other persons.

6.4    The actions and omissions of the Defendants violated RCW 19.86, *et seq.*

6.5    Washington's CEMA prohibits any "person," as that term is defined in RCW 19.190.010(11), from initiating or assisting in the transmission of an unsolicited commercial electronic text message to a Washington resident's cellular phone or similar device

6.6    Washington's CEMA provides a "safe harbor" for persons who can show that a recipient of their commercial electronic text message has clearly and affirmatively consented in advance to receive such text a message.  RCW 19.190.070(1)(b).

6.7    The Defendants initiated or assisted in the transmission of one or more commercial electronic text messages to the Plaintiff and putative class members without first obtaining those recipients' clear and affirmative consent to receive such messages.

6.8    The actions and omissions of the Defendants violated RCW 19.190.060(1).

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 23 of 26

6.9     Pursuant to RCW 19.190.100, initiating or assisting in the transmission of unsolicited commercial electronic text messages is an unfair or deceptive act in trade or commerce and an unfair method of competition for purposes of applying the CPA.

6.10    Pursuant to RCW 19.190.100, initiating or assisting in the transmission of unsolicited commercial electronic text messages is a matter vitally affecting the public interest for purposes of applying the CPA.

6.11    Pursuant to RCW 19.190.100, initiating or assisting in the transmission of unsolicited commercial electronic text messages is not reasonable in relation to the development and preservation of business.

6.12    Pursuant to RCW 19.19.040(1), damages to each recipient of a commercial electronic text message sent in violation of the CEMA are the greater of $500 for each such message or actual damages, which establishes the injury and causation elements of a CPA claim as a matter of law.  *Wright*, 189 Wn.2d at 732, 406 P.3d at 1155 (2017).

6.13    As a result of the Defendants' actions and omissions, the Plaintiff and members of the putative class are each entitled to recover $500, plus exemplary damages of $1,000, plus costs and reasonable attorneys' fees for each CEMA violation committed by the Defendants.

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 24 of 26

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

7.1    Declaring that this action is properly maintainable as a Class action and certifying the Plaintiff as Class representative and Kirk D. Miller of Kirk D. Miller, PS, and Brian G. Cameron and Shayne J. Sutherland of Cameron Sutherland, PLLC, as Class Counsel;

7.2    Awarding Plaintiff and the Class actual and statutory damages, costs, and fees pursuant to RCW 19.190.040(1) and RCW 19.86.090;

7.3    Awarding treble damages pursuant to RCW 19.86.090;

7.4    Granting injunctive relief prohibiting the Defendants from initiating or assisting in the transmission of unsolicited commercial electronic text messages without first obtaining targeted recipients' clear, affirmative, and express written consent to receive such messages;

7.5    Granting declaratory relief finding that the Defendants' conduct violated Washington's CEMA and CPA;

7.6    Awarding the Plaintiff his costs in this action, including reasonable attorneys' fees and expenses; and

7.7    Awarding Plaintiff and the Class such other and further relief as the Court may deem just and proper.

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 25 of 26

DATED this 10th day of December, 2019.

KIRK D. MILLER, PS

s/Kirk D. Miller
Kirk D. Miller, WSBA #40025
*Attorney for Plaintiff*

CAMERON SUTHERLAND, PLLC

s/Brian G. Cameron
Brian G. Cameron, WSBA #44905
Shayne J. Sutherland, WSBA #44593
*Attorneys for Plaintiff*

FIRST AMENDED COMPLAINT –
CLASS ACTION - Page 26 of 26