Kirk D. Miller, WSBA #40025
KIRK D. MILLER, P.S.
421 W. Riverside Avenue, Ste. 660
Spokane, WA 99201
(509) 413-1494 Telephone
kmiller@millerlawspokane.com

*Attorney for Isaac Gordon and the Class*

(additional counsel on signature page)

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ISAAC GORDON, an individual, and all those similarly situated,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ROBINHOOD FINANCIAL, LLC, a Delaware limited liability company,<br><br>　　　　Defendant. | Case No.: 2:19-cv-0390 TOR<br><br>**PLAINTIFF'S AMENDED RESPONSE TO DEFENDANT'S MOTION TO DECERTIFY AND DISQUALIFY CLASS COUNSEL (ECF NO. 172)**<br><br>**Hearing Date: July 26, 2021**<br>**No Oral Argument Requested** |

## I.　INTRODUCTION

Mr. Gordon no longer wishes to serve as class representative in this case. (ECF 198, ¶ 33). The parties agree that this, by itself, is sufficient grounds to decertify the class. (ECF 172, pg. 18). Upon decertification of the class, there will be no class counsel to disqualify, which should present a relatively straightforward

PLAINTIFF'S AMENDED RESPONSE TO
DEFENDANT'S MOTION TO DECERTIFY
AND DISQUALIFY CLASS COUNSEL - 1

matter within the scope of this case. However, Defendant's Motion to Disqualify Class Counsel is not based on the needs or scope of *this* litigation, but rather Defendant's interests in preventing what it labels as "copycat" litigation and Defense counsel's competing interests in completely different cases, involving different claims and fact patterns, pending in different courts.

With the parties agreeing that decertification is warranted, and therefore the role of "class counsel" consequently obviated, Defendant's motivations for disqualifying class counsel, subjecting non-parties to invasive and harassing discovery demands (while avoiding any deposition of the Plaintiff himself), and flooding the record with disparaging adjectives and insinuations, are the real subject of their pending motions.

With respect to the merits of this case, and Robinhood's widespread and *continuing* violations of Washington law, Defendant's cries of impropriety in this litigation are both feigned and inconsequential. Despite Defendant's free-ranging allegations that the attorneys involved in this case are engaged in various forms of conspiracy, "claim manufacturing," and entrapment, none of this has any bearing on the underlying merits of the case. Defendant should not be permitted to conduct unbounded discovery, nor should the case be further stayed, so that the Defendant can attempt to cook up novel and salacious accusations that, in the end, have

PLAINTIFF'S AMENDED RESPONSE TO
DEFENDANT'S MOTION TO DECERTIFY
AND DISQUALIFY CLASS COUNSEL - 2

absolutely no bearing on the resolution of this case. If Mr. Gordon consented to receive the text message at issue, then the parties agree that his claim fails under RCW 19.190.070(1)(b). If he did not consent, then Defendant's accusations change nothing.

Mr. Gordon denies that he consented to receive the text message at issue, and Defendant has had nearly two years to investigate the veracity of that assertion – so far turning up nothing more than the message sued on was sent by Plaintiff's friend, who happens to be one of his attorneys' brother. That fact is hardly surprising, given that the entire basis of this lawsuit is that Robinhood violated RCW 19.160, *et seq.*, by "assisting in the transmission" of a commercial text message, as part of its "refer-a-friend" marketing scheme. Defense counsel's invasive, overbroad, harassing, and seemingly unbounded discovery charade, which targets Mr. Gordon's attorneys and his attorney's family on issues that have no bearing on this case[1], should end immediately. The stay should be lifted so that

---

[1] Since this case was commenced in October 2019, Defendant has never sought to depose Plaintiff himself or sent him a single Interrogatory regarding whether or not he consented to receive its commercial text message, and nothing in the text communications between Mr. Gordon and Brian Cameron or John Cameron, all of which have been produced to defense counsel, implies that Plaintiff consented to receive the text message at issue.

PLAINTIFF'S AMENDED RESPONSE TO
DEFENDANT'S MOTION TO DECERTIFY
AND DISQUALIFY CLASS COUNSEL - 3

this case can proceed to whatever end the parties agree and, ultimately, whatever the Court decides.

## II. ARGUMENT

### A. Defendant's Cry of "Manufactured Claim" is Not a Defense to a CEMA Violation.

Unlike most cases alleging violations of Washington's Consumer Electronic Mail Act (CEMA), RCW 19.190, *et seq.*, which typically involve companies directly transmitting commercial text messages without the consent of the plaintiff, this case alleges that Robinhood "assist[ed] in the transmission" of a commercial text message sent to Mr. Gordon by "provid[ing] substantial assistance or support which enables any person to formulate, compose, send, originate, initiate, or transmit a commercial electronic mail message or a commercial electronic text message." RCW 19.190.010(1). This broad definition is not focused on who sent the message at issue. Rather, the only relevant question is whether Robinhood "assisted" in any of the ways set forth in the statute. *Id*. In this case, it undeniably did so. The entirety of CEMA focuses on the defendant's actions, with the singular exception that if the recipient consented to receive the message in question, then no violation occurred. RCW 19.190.070(1)(b). Unable to prove Mr. Gordon's consent in this case, Defendant now relies on hyperbole and attacks on Plaintiff's counsel as its sole defense, none of which can be justified.

PLAINTIFF'S AMENDED RESPONSE TO
DEFENDANT'S MOTION TO DECERTIFY
AND DISQUALIFY CLASS COUNSEL - 4

Courts have examined cases where the parties actually stipulate to facts indicating the "manufacturing" of claims far more extensive than what Defendant alleges in this case. For example, in *Leyse v. Bank of Am., Nat'l Ass'n*, CV117128SDWSCM, 2020 WL 1227410, at *1 (D.N.J. Mar. 13, 2020), *aff'd,* 20-1666, 2021 WL 1997452 (3d Cir. May 19, 2021), a federal Telephone Consumer Protection Act (TCPA) claim, the court found the following:

> Plaintiff also worked as an investigator for his counsel of record, Todd C. Bank, at the time of the Call, helping him prepare TCPA lawsuits. In that role, Plaintiff called companies to determine, *inter alia*, the number and frequency of the calls they made. During these investigative calls, Plaintiff used a false name, withheld the true purpose of the calls, and secretly recorded the calls. He then provided the recordings to Mr. Bank to use in TCPA litigations such as this one. For performing "well over a hundred" investigative calls, Plaintiff was paid $60 an hour and earned between $40,000 and $75,000 … [T]he record suggests instead that he welcomed and consented to the March 11th Call.

In another TCPA action, *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016), the plaintiff in that case "purchased at least thirty-five cell phones and cell phone numbers with prepaid minutes for the purpose of filing lawsuits under the Telephone Consumer Protection Act ("TCPA")."

> Although Plaintiff occasionally informed the caller to stop calling, she intended for the calls to continue because she "'was hopefully going to ask [her] lawyers to do trebling with knowing and willful'" violations of the TCPA if they did

PLAINTIFF'S AMENDED RESPONSE TO
DEFENDANT'S MOTION TO DECERTIFY
AND DISQUALIFY CLASS COUNSEL - 5

[citing sources]. Plaintiff has filed at least eleven TCPA cases in this jurisdiction, although she "[does not] know how many," and has sent at least twenty pre-litigation demand letters, although she "[does not] know" how many.

When questioned about the purchase of her cell phones, Plaintiff testified:
Q. Are you purchasing these phones purposefully to cause them to ring?
A. Yes.
Q. Okay. And you understand that the phones ringing is—is with—is it your intention that these phone calls are going to result then in some sort of a demand whether it's pre-litigation or an actual lawsuit?
A. I believe so.

In *Leyse* and *Stoops*, the courts determined that because the plaintiffs freely admitted that they were luring defendants into violating the TCPA, there was a lack of standing. The reasoning used to dismiss *Stoops,* however, was later rejected as bad law, following the holding in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). *Jawk Enterprises, LLC v. Greenlight Energy, Inc.*, 19-CV-4212-ARR-SJB, 2019 WL 5881752, at *1 (E.D.N.Y. Nov. 5, 2019). Yet, Defendant in this case does not argue lack of Article III standing or any specific and concrete legal basis for alleging that Mr. Gordon is inadequate. Rather, Robinhood feigns indignation at the notion that it was somehow entrapped into violating CEMA when Mr. Gordon's friend sent him a "refer-a-friend" text message with Robinhood's encouragement and assistance.

PLAINTIFF'S AMENDED RESPONSE TO
DEFENDANT'S MOTION TO DECERTIFY
AND DISQUALIFY CLASS COUNSEL - 6

Essentially admitting that it violated CEMA, Robinhood now seeks a scapegoat to absolve it of liability for its actions.

The concept of "entrapment" exists in Washington law, but never has it been recognized in a consumer protection scenario. In *State v. Racus*, 7 Wn. App. 2d 287, 303, 433 P.3d 830, 838, *review denied,* 193 Wn.2d 1014, 441 P.3d 828 (2019), the defendant in an attempted child rape case appealed the trial court's disallowance of an entrapment defense. There, the court stated:

> To prove the affirmative defense of entrapment, a defendant must show, by a preponderance of the evidence, that he committed a crime, that the State or a State actor lured or induced him to commit the crime, and that the defendant lacked the disposition to commit the crime. *State v. Lively*, 130 Wash.2d 1, 9, 921 P.2d 1035 (1996); RCW 9A.16.070. Failure to prove either of these prongs is fatal to the defense of entrapment. *Lively*, 130 Wash.2d at 9-10, 921 P.2d 1035. However, entrapment is not a defense if law enforcement "merely afforded the actor an opportunity to commit a crime." RCW 9A.16.070(2). Neither the defendant's mere reluctance to violate the law, nor the use of a normal amount of persuasion to overcome the defendant's resistance is not entrapment. *State v. Trujillo*, 75 Wash. App. 913, 918, 883 P.2d 329 (1994).

Nobody induced or lured Robinhood into assisting in the transmission at issue in this case. At worst, Robinhood was "afforded an opportunity" to violate Washington law when one of its customers sent an invitation to another Washington resident. Not only was Robinhood not reluctant, it actively

PLAINTIFF'S AMENDED RESPONSE TO
DEFENDANT'S MOTION TO DECERTIFY
AND DISQUALIFY CLASS COUNSEL - 7

encouraged this and countless other violations by offering free stocks. In any event, entrapment is a defense to a charged crime, not a civil cause of action. *David M. Vines, Appellant, v. City of Black Diamond, et al., Respondents.*, 81748-5-I, 2021 WL 2530970, at *3 (Wash. Ct. App. June 21, 2021).

Even *if* Mr. Gordon was found to have colluded with some other party to receive the text message at issue in this case, which he did not, that would not be a basis to find him inadequate as a plaintiff or a class representative. The law requires that Mr. Gordon provide prior express written consent before anyone may transmit or assist in the transmission of a commercial text message to him. Mr. Gordon did not consent in any form to receive Robinhood's text message, nor did he take any affirmative steps to lure Robinhood into violating Washington law. Robinhood's refer-a-friend text solicitation worked exactly as Robinhood intended.

Likewise, even *if* Brian Cameron[2] had some discussion with his brother – or anyone else – about Robinhood's illegal practices and corresponding consumer rights and remedies, there is absolutely no authority for the idea that such behavior is unethical, improper, or constitutes any wrongdoing whatsoever. Nor is it a basis

---

[2] Brian Cameron, an experienced litigator, in good standing with all Washington state and federal courts, and with no disciplinary history, testified under oath that he never instructed anyone to send the Robinhood text message at issue to Mr. Gordon.

PLAINTIFF'S AMENDED RESPONSE TO
DEFENDANT'S MOTION TO DECERTIFY
AND DISQUALIFY CLASS COUNSEL - 8

to avoid liability under CEMA. Either Robinhood assisted John Cameron in the transmission of the commercial text solicitation to Mr. Gordon or it did not. Either Mr. Gordon consented to receive the text message from John Cameron or he did not. If Robinhood assisted the transmission, and Mr. Gordon did not consent, the inquiry is over. Robinhood is liable for violating CEMA and therefore, Washington's Consumer Protection Act (CPA), RCW 19.86, *et seq*.

Robinhood seems to argue that if it sketches out some kind of "conspiracy" to force it to violate CEMA, then any claim that it violated the law automatically fails, and both the consumer and his or her counsel should be subject to reprimands. This idea is absurd in the context of Washington's consumer protection jurisprudence. "Private enforcement of the CPA was not possible until 1971, when the legislature created the private right of action to encourage it." *Scott v. Cingular Wireless,* 160 Wn.2d 843, 853 (2007) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 783–84 (1986)). "Private actions by private citizens are now an integral part of CPA enforcement." *Id;* RCW 19.86.090. Furthermore, "[p]rivate citizens act as private attorneys general in protecting the public's interest against unfair and deceptive acts and practices in trade and commerce." *Id*. (citing *Lightfoot v. MacDonald,* 86 Wn.2d 331, 335–36, 544 P.2d 88 (1976)). Attorneys who inform consumers of

PLAINTIFF'S AMENDED RESPONSE TO
DEFENDANT'S MOTION TO DECERTIFY
AND DISQUALIFY CLASS COUNSEL - 9

their rights and remedies regarding prohibited acts and practices are not "manufacturing claims," as Defendant's counsel suggests, (ECF No. 172), they are doing their jobs as consumer advocates.

Regardless of who sent or initiated the text message at issue to Mr. Gordon, Robinhood only has itself to blame for building and promoting a telephone app that is designed to perform a function that intrinsically violates Washington law. None of the targets of Robinhood's current ire altered the software system that Robinhood built. None of them formulated or composed the text message sent to Mr. Gordon. Nobody conspired with anyone at Robinhood to get the company to break the law so that Mr. Gordon could sue. While Mr. Gordon may also have a $500 claim against John Cameron for assisting Robinhood in the transmission of the text message he sent to his friend, that is not the subject of the present lawsuit.

### B. Defendant's Abuse of the Discovery Processes Must End.

In response to this Court's May 26, 202, Order (ECF No. 120) granting a stay on proceedings, Defendant's counsel has focused its discovery efforts almost exclusively on plainly irrelevant, disproportionate, and harassing demands on non-parties. Since this case was originally filed in state court in October 2019, and in the nearly six weeks since the court issued its stay order, Defendant's counsel have never sought to depose the Plaintiff in this matter, who they allege engaged in a

conspiracy to force Robinhood to violate CEMA. (ECF No. 172). If Defendant could show that Mr. Gordon consented in advance to receive the text message at issue in this case, then Robinhood would have a complete defense under RCW 19.190.070(1)(b), and this case would likely conclude on summary judgment.

Mr. Gordon has provided Defendant's counsel with copies of all communications in his possession between himself and John Cameron, the person Robinhood identified as the sender of the text message at issue in this case, none of which support Defense counsel's conspiracy theory. (ECF No. 198, ¶ 27). Mr. Gordon has also provided copies of all nonprivileged[3] communications in his possession between himself and attorney Brian Cameron, none of which support Defense counsel's conspiracy theory. (ECF No. 198, ¶ 27). On his own initiative, Mr. Gordon additionally provided copies of all "group chat" communications involving himself, John Cameron, Brian Cameron, and others. (ECF No. 198, ¶ 30). Once again, none of these communications support Defense counsel's conspiracy theory. (*Id*; *see also* ECF Nos. 173-1, 173-2). After John Cameron's counsel produced all communications in his client's possession between his client and Mr. Gordon, which included a handful of general, equally unsupportive texts

---

[3] Mr. Gordon has made clear that he will not oppose Defendant's request for *in camera* review of privilege redactions in these communications. (ECF No. 137 ¶ 5).

PLAINTIFF'S AMENDED RESPONSE TO
DEFENDANT'S MOTION TO DECERTIFY
AND DISQUALIFY CLASS COUNSEL - 11

exchanged after January 2020, Defendant's counsel disingenuously claimed that Mr. Gordon was holding back on this irrelevant information, (ECF No. 172), knowing full well that Mr. Gordon had no text records after January 2020, which were lost when he had to replace his old phone. (ECF No. 198, ¶ 28; ECF No. 137-2). Defense counsel intentionally misrepresents these circumstances, suggesting that Plaintiff's counsel's assurance regarding production of all communications *in Mr. Gordon's possession* were "untrue," (ECF No. 172, pg.7), even though that is exactly the assurance Plaintiff's counsel provided, as verified by Defense counsel's own citations, (ECF No. 136, pg. 4; ECF No. 160, pg. 3). Disregarding any genuine pursuit of information, Defendant's counsel instead misstates the facts regarding Plaintiff's production as a way to disparage Mr. Gordon's character, then attempts to use those contrived disparagements as justification for subjecting various non-parties to invasive and oppressive discovery demands (ECF No. 181, pg.5).

Undoubtedly concerned that Mr. Gordon's deposition testimony will further undermine their conspiracy theory, Defendant's counsel has instead launched a campaign of harassment and oppression against multiple non-parties for purposes completely unrelated to this case. Rather than engaging in good-faith discovery to vindicate their client's potential defenses through the parties and claims actually at

issue in this case, Defendant's counsel has now confessed that their primary motivation is to use this court's time and non-party resources to conduct "back-door" discovery on other cases in which the present parties' counsel are involved. (ECF No. 148, pg. 5; ECF No. 149, pg. 4; ECF No. 176 ¶ 4).

In an effort to justify their harassment of non-parties, Defendant's counsel has also attempted to amend Mr. Gordon's claims to include at least one more text message that was never alleged in either his initial or First Amended Complaint. (ECF No. 1-1 ¶¶ 5.6 – 5.9; ECF No. 9 ¶¶ 5.8 – 5.12). Plaintiff clearly and specifically alleged that a single text message sent on July 24, 2019, violated CEMA, RCW 19.190, *et seq*. (*Id.*). Whether because he missed, ignored, consented to receive, or simply elected not to bring claims involving other text messages, it was Mr. Gordon's prerogative to raise whatever claims he chose in his own lawsuit. While Defendant's counsel now feigns confusion regarding the single violative message alleged in Plaintiff's First Amended Complaint, this exclusive claim is exactly what Defendant offered in support of its previous Motion to Dismiss, (ECF No. 11), repeatedly drawing attention to "the sole text message" Mr. Gordon received, (*Id.* at pg. 16), and more specifically "the single text message about which Plaintiff complains," (*Id.* at pg. 18, fn. 4). In reality, Defendant's counsel wants to conduct irrelevant and invasive discovery on non-

parties like Nathan Budke and Ewan Cameron not because it has anything to do with vindicating their client's defense in this case, but because they improperly and admittedly seek "back-door" discovery regarding other legal actions pending in other courts, which involve completely different claims and fact patterns and, in many cases, other Defense counsel.  (ECF No. 148, pg. 5; ECF No. 149, pg. 4; ECF No. 176 ¶ 4; ECF No. 201, ¶ 20).

Defendant's counsel has also admitted that its other motivation for pursuing irrelevant and oppressive discovery from non-parties is to vilify and retaliate against Plaintiff's counsel for serving as consumer advocates in other class actions in Washington.  (ECF No. 176 ¶¶ 4, -7, 9; ECF No. 148, pg. 5; ECF No.149, pg. 4).  All of this is based on an ever-evolving conspiracy theory in which Plaintiff's counsel informs consumers of potential violations and their corresponding rights and remedies in an effort to get those consumers to contact qualified counsel for representation when those rights are violated. (ECF No. 201, ¶¶ 9-18, 21). Defendant's counsel calls this activity "claims manufacturing" and characterizes the same as "misconduct" worthy of ever-expanding, non-party discovery and reputational disparagements to the record.  (ECF No. 172; *Passim*).

In fact, Plaintiff's counsel regularly, openly, and proudly monitors potentially violative conduct occurring in various business and industries; informs

their network of clients, colleagues, community partners, friends and family, and others regarding these potential violations and associated consumer rights; then represents or refers consumers who are actually subjected to the same violative practices. (ECF No. 201, ¶¶ 8-9). This type of ongoing investigation and advocacy is standard practice among consumer advocates in Washington, not some kind of nefarious conspiracy to force businesses to violate the law so that people can sue them. (*Id*. at ¶ 9). Unlike personal injury attorneys representing unforeseen "accidents" or contract attorneys working with predetermined objectives and outcomes, consumer protection advocates are expected to play a special role "as private attorneys general in protecting the public's interest against unfair and deceptive acts and practices in trade and commerce." *Scott,* 160 Wn.2d at 853. "Private actions by private citizens are now an integral part of CPA enforcement." *Id;* RCW 19.86.090. Furthermore, "[p]rivate citizens act as private attorneys general in protecting the public's interest against unfair and deceptive acts and practices in trade and commerce." *Hangman Ridge,* 105 Wn.2d at 783–84. Plaintiff's counsel fulfills this role by informing consumers of potential violations, rights, and remedies through direct consultations, social interactions, continuing legal education (CLE) presentations, community outreach, pro bono and volunteer service through WSBA's Moderate Means Program (MMP), Spokane County Bar

PLAINTIFF'S AMENDED RESPONSE TO
DEFENDANT'S MOTION TO DECERTIFY
AND DISQUALIFY CLASS COUNSEL - 15

Association's Consumer Advocacy Program (CAP), and other opportunities. (ECF No. 201, ¶¶ 8-9). This is not only true for businesses engaging in potential CEMA violations, but also debt collectors, landlords and property management companies, motor vehicle dealers, consumer retailers, lenders, and many others. (*Id*. at ¶¶ 10-16). In the overwhelming majority of potential cases, consumers are reluctant to proceed with relatively small-value claims against violators. (*Id*. at ¶ 18). It is far less likely that consumers will be willing to stand as class representatives against widespread consumer protection violations, such as those at issue in this case. (*Id*.).

Defendant's counsel chooses to label, repeat, and publish this form of advocacy as "claim manufacturing" and "misconduct" as pervasively as possible not because it serves their client's defense, but because they hope it will discourage plaintiffs from proceeding in other cases and dissuade Plaintiff's counsel from operating as some of the only dedicated consumer protection firms in the state. With respect to Defendant's pending motions, Defense counsel's oppressive tactics against Plaintiff, his friends, and his counsel appear to have succeeded in dissuading Mr. Gordon from continuing as class representative in this case. (ECF No. 198, ¶ 33).

PLAINTIFF'S AMENDED RESPONSE TO
DEFENDANT'S MOTION TO DECERTIFY
AND DISQUALIFY CLASS COUNSEL - 16

Defense counsel's attempt to attack *pro hac* counsel is similarly disingenuous. Throughout the course of this litigation, Robinhood has persistently and unrepentantly continued to violate Washington's anti-spamming laws through its "refer-a-friend" solicitations, adding potentially hundreds of thousands more violations to the hundreds of thousands already implicated in this case. If the court decertifies the present class, and Berger Montague or any other firm brings another putative class action against Robinhood for violating CEMA, it would be far from the "copycat" action Defense counsel suggests, (ECF No. 172, pg. 7), but rather a completely new action, involving an even larger putative class, with an even stronger basis for an award of exemplary damages under RCW 19.86.090. Whether or not this case proceeds, another lawsuit for exactly the same violations will be filed.

Being fully aware of these facts, (ECF No. 172, pg. 18; ECF No. 133, pg. 6), Defendant's counsel could have simply relied on Mr. Gordon's statements regarding withdrawal as a basis for decertifying the class, which would then obviate the need for class counsel and therefore deliver a complete result for their client. Rather than focusing on their client's objectives in this case, Defendant's counsel requested – and Plaintiff's counsel agreed – to exceed page limits for the purposes of presenting their client's motions. Instead of focusing on the relevant

and stipulated issue of decertification, Defendant's counsel allocated the majority of additional pages toward disparaging and potentially defamatory insinuations related to other cases, which have nothing to do with the matter presently before this court.

Should the court decertify the present class, Mr. Gordon requests that the court also refocus both the parties' objectives and the court's resources on the merits of this case, rather than Defense counsel's seemingly endless and invasive discovery charade against Plaintiff's counsel and other non-parties who have nothing to do with the claim at issue in Mr. Gordon's case. The court previously stayed proceedings to allow Defendant to conduct discovery, and Defendant has now, without relief from the stay, restarted substantive proceedings with its motions to decertify and disqualify.

## IV. CONCLUSION

Defendant seems intent on conducting an ever more expansive, invasive, and speculative "investigation" into everything but the merits of their "consent" defense under RCW 19.190.070(1)(b). At its core, and despite the innuendos, ad-hominem attacks, and generalized allegations of misconduct, the only viable accusation that potentially impacts this case is that Mr. Gordon consented to receive the text message that is the basis of this claim, which would defeat his

PLAINTIFF'S AMENDED RESPONSE TO
DEFENDANT'S MOTION TO DECERTIFY
AND DISQUALIFY CLASS COUNSEL - 18

claims under RCW 19.190.070(1)(b). Although what constitutes "consent" requires legal analysis, Plaintiff did not consent under any theory. Either Mr. Gordon did or did not consent to receive the text message. Either Robinhood did or did not assist in transmitting the text message (including formulating or composing the message). RCW 19.190.010(1).

For these reasons, the Court should decertify the class, obviating the roles of class counsel and the need to disqualify the same. To the extent the Court continues its stay of proceedings, even after Defendant has proceeded with substantive motions, the Court should refocus this case to the merits of the claims, restrict discovery to what is deemed necessary to ascertain "consent" under CEMA, and set hard deadlines for the stay to be lifted and a new scheduling order to be issued.

DATED this 12th day of July, 2021.

s/ *Kirk D. Miller*
Kirk D. Miller, WSBA #40025

s/ *Brian G. Cameron*
Brian G. Cameron, WSBA #44905

*Attorneys for Plaintiff and the Class*

PLAINTIFF'S AMENDED RESPONSE TO
DEFENDANT'S MOTION TO DECERTIFY
AND DISQUALIFY CLASS COUNSEL - 19

# CM/ECF CERTIFICATE OF SERVICE

I certify that on the date indicated below I caused an electronic copy of the foregoing document to be filed with the clerk of the court via CM/ECF system which will then send notification of such filing(s) to:

KennethPayson@dwt.com
Kenneth E. Payson

LaurenRainwater@dwt.com
Lauren Rainwater

EricFranz@dwt.com
Eric Franz

bcameron@cameronsutherland.com
Brian G. Cameron

kmiller@millerlawspokane.com
Kirk D. Miller

emdrake@bm.net
E. Michelle Drake

srios@bm.net
Sophia M. Rios

DATED this 12th day of July, 2021.

s/ *Teri A. Bracken*
Teri A. Bracken, Paralegal